UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SCOTT FINESTONE and REBECCA
FINESTONE, individually, and as parents
and friends of ZACHARY FINESTONE,

      Plaintiffs,

vs.

FLORIDA POWER & LIGHT COMPANY,
a Florida Public Utility Corporation,

      Defendant.
_____/

TISH BLAKE and JOHN LOWE, as personal
representatives of the estate of ASHTON LOWE,
and TISH BLAKE and JOHN LOWE as the
surviving parents of ASHTON LOWE,

      Plaintiffs,

vs.

FLORIDA POWER & LIGHT COMPANY,
a Florida Public Utility Corporation,

      Defendant.
_____/

CASE NO. 03-14040-CIV-COHN

**NIGHT BOX FILED**

**DEC 1 - 2005**

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

CASE NO. 04-14128-CIV-COHN ✓

### MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. ROBERT PETER GALE

The testimony of Dr. Robert Peter Gale, Plaintiffs' causation expert, should be excluded under Fed. R. Evid. 702 because his opinions that radiation caused or substantially contributed to the medulloblastoma in Ashton Lowe (Ashton Blake) and neuroblastoma in Zachary Finestone are not based on a reliable methodologically, are not supported by any scientific or medical evidence, and will not assist the trier of fact to understand the evidence or resolve a factual issue – here whether radiation caused or substantially contributed to Plaintiffs' cancers. Dr. Gale's testimony should also be excluded under Rule 403 because any potentially probative value of his



testimony is greatly outweighed by the danger that it will confuse the issues, mislead the trier of fact and prejudice the Defendant. In support of this Motion, Defendant cites to Dr. Gale's November 30, 2005 deposition and the exhibits thereto, which will be provided after the expedited deposition transcript is obtained.

## INTRODUCTION

Dr. Gale's expert report cites no medical or scientific literature identifying neuroblastoma or medulloblastoma as an effect or radiation. Gale dep. exhibit 4. The three documents Gale listed as materials he relied upon in support of his opinions included only one scientific or medical reference – the 1990 BEIR V report of the National Academy of Sciences. 11/30/05 Gale deposition ("Gale dep.") at Exhibit 5 and Gale dep. pp.[1] In its subchapter on brain and nervous system tumors, BEIR V, discusses various types of tumors (e.g., meningiomas), but makes no reference to either medulloblastoma or neuroblastoma. Gale dep. exhibit 16 at pp. 10-13.

Gale cannot cite to and does not know of any epidemiological studies showing a significant excess of medulloblastoma from radiation, or any medical or scientific literature reporting radiation causing this disease. Gale dep. pp. He identifies medulloblastoma as an effect of radiation only because he believes "[t]here is no biological or physical reason to exclude the tissue or origin for medulloblastoma from the universe of tissues in which radiation can cause or contribute to developing cancer." Gale dep. exhibit 4.

Gale cannot cite to and does not know of any epidemiological studies or other scientific or medical literature showing a significant excess of neuroblastoma from radiation exposure

---

[1] Gale's deposition occurred on November 30, 2005, and the transcript was not available before the due date of this Memorandum. The cited portions of deposition (cited herein as "Gale dep. pp.") and deposition exhibits shall be submitted when they are available from the court reporters.

where the relative risk was 2.0 or greater – at least a doubling of the background risk for this disease in unexposed persons. Gale dep. pp. For his opinion on neuroblastoma as a radiation effect, Gale identifies only an article by Doll and Wakeford that includes no discussion of neuroblastoma, but a table showing a 1.46 relative risk for neuroblastoma reported by Bithell and Stewart in a 1975 study involving prenatal radiation exposure – a 46% excess above the background rate. Gale dep. exhibit 15 and Gale dep. pp. Gale cited no confirming studies and made no reference to negative studies cited by Doll and Wakeford. Gale conceded that he does not know how plaintiffs' prenatal exposures, or radiation doses, compared to those of the children in the Bithell and Stewart study who developed neuroblastoma.

BEIR V, the only scientific reference cited in Gale's expert report, states: "Epidemiologists generally agree that excess risks of less than 50% [like the 46% excess in Bithell and Stewart] are difficult to interpret causally." Gale dep. exhibit 16 at p. 50. Relying upon only the 46% excess for neuroblastoma reported by Bithell and Stewart to support his causation opinion on neuroblastoma, Gale disagrees with BEIR V that excesses of less than 50% are difficult to interpret causally – even though he claims to be an epidemiologist and his report cites BEIR V as the sole scientific or medical reference for his opinion. Gale dep. pp.

The International Agency for Research on Cancer (IARC), an important scientific body Gale identified early in his deposition, reports: "No association between postnatal exposure to radiation and neuroblastoma ... has been found." Gale dep. pp. and Gale dep. exhibit 14 at p. 146. Gale could not cite and did not know of any studies showing a significant excess of neuroblastoma from post-natal exposure – and only referred generically to the depositions of Drs. Dollinger and Meadows. Gale dep. pp. Curiously, Gale testified that he reviewed those

3

depositions before preparing his report – even though those depositions were taken *after* his report was submitted. Gale dep. exhibit 6 and Gale dep. pp.

The American Cancer Society (ACS) statement on neuroblastoma, which Resnikoff cites in his September 26, 2005 report (Gale dep. exhibit 10 – the same Resnikoff report that is one of Gale's three documents listed in support of his opinion, *i.e.*, at Gale dep. exhibit 5) states: (1) "The only known risk factor for neuroblastoma is heredity," which "probably represent[s] 1% to 2% of all neuroblastomas;" (2) "The causes of neuroblastoma are not completely known;" (3) "the reasons for DNA changes that cause neuroblastoma are not known;" and (4) "Because there are no avoidable risk factors for neuroblastoma, there is no proven way to prevent the disease." Gale dep. exhibit at pp. 4-5, and Gale dep. pp.

BEIR V uses a 10-year minimal latency period between the time of radiation exposure and the appearance of a radiation-induced cancer other than leukemia or breast cancer. Gale dep. exhibit 16 at p. 168 and Gale dep. pp. Gale commented that thyroid cancers, like leukemia, can also have a short latency, and suggested that BEIR V's statement on minimal latency does not apply to prenatal radiation – but only to postnatal radiation. Gale dep. pp. Gale offers no explanation as to how postnatal radiation exposures for Plaintiffs could have caused or contributed to their cancers given the 10-year minimal latency period for radiation causing cancers other than leukemia, breast and thyroid.

Gale agrees that the cause of most childhood brain tumors is unknown. Gale dep. pp. Brain cancers are the second most common form of cancer in children. Gale dep. pp. For the youngest children – infants – the most common cancer is neuroblastoma, with about two-thirds of the cases occurring by or before age six. Gale dep. pp. A person's lifetime risk for

developing a primary brain cancer is almost 1%. For a male, the lifetime risk of developing some type of cancer is almost 50%. Gale dep. exhibit 13.

Gale's expert report cites, as the basis for his opinion that radiation caused Plaintiffs' cancers, the "probability of causation" or PC estimates Resnikoff reports for each Plaintiff using values obtained at the 95th percentile of uncertainty with the IREP program designed for awarding compensating for radiation injury claims by Department of Energy and contractor employees under the Energy Employees Occupational Illness Compensation Program Act (EEOICPA). See Gale dep. exhibits 4, 7-12; Gale dep. pp. Gale testified that he was not basing his causation opinions in these cases on the IREP PC estimates, or using any PC calculations for the Plaintiffs. Gale dep. pp. Ironically, Dr. Resnikoff testified that he generated the EEOIPCA-prescribed PC calculations at Gale's request, to assist Gale with his opinion. Deposition of Martin Resnikoff (Dec. 1, 2005) pp.[2]

Both Gale and Resnikoff conceded that the IREP generates a range of PC values, with a wide range of uncertainties, from 1st, 5th, and 25th on the lower side, to a midrange value at the 50th percentile of uncertainties, to the highest PC estimates at the 75th, 95th, and 99th percentiles of uncertainty. Gale dep. pp.; Gale dep. exhibits 7-8, 11-12; Resnikoff dep. pp.; Resnikoff dep. exhibits P and Q. Gale admitted that the PC values obtained at the 95th percentile of uncertainty (the ones in the Resnikoff and Gale reports) have a 2.5% likelihood of being lower than the real PCs and a 97.5% likelihood of being higher than the real PCs. Gale dep. pp. Resnikoff similarly testified that PCs obtained at the 95th percentile have a 95% probability of being higher than the real PCs, while PCs obtained at the 50th percentile of uncertainty have a 50% probability

---

[2] All reference in this Memorandum to Resnikoff's deposition relate to his December 1, 2005 deposition. The transcript was not available before the due date of this Memorandum. The cited portions of the Resnikoff deposition (cited herein as "Resnikoff dep. pp"), and deposition exhibits, shall be submitted when they are available from the court reporters.

5

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

of being too high and a 50% probability of being too low. Resnikoff dep. pp. *Thus, both Gale and Resnikoff concede that the likelihood that their PCs are too high is at least 95% and as much as 97.5%.*

While Gale offered no explanation why he abandons his report's reliance on the PCs obtained at the 95th percentile of uncertainty, the inherent unreliability of these extremely high PC values are apparently the reason. PCs obtained at the 95th percentile of uncertainty derive from resolving uncertainties as to radiation dose and radiation risk per unit dose in favor of a claimant. Thus, when Resnikoff plugged in doses of 16 rem (2 rem per exposure x 8 exposures) for Lowe (Blake), the IREP PC program pushed those doses up to almost 50 rem (6.24 rem per exposure x 8 exposures), thereby resolving presumed uncertainties on dose solidly in Plaintiff's favor. Gale dep. exhibits 7-8 at p. 3; Gale dep. pp.; Resnikoff dep. exhibit P-Q at p. 3. Resnikoff later explained that the doses of 16 rem at the 50th percentile of uncertainty and almost 50 rem at the 95th percentile of uncertainty are intermediate results generated by the PC program. Resnikoff testified that the doses he actually input to the program for the PC calculations for Lowe were not 16 rem, but just above 10 rem. Resnikoff dep. pp.; Resnikoff dep. exhibit Q at p. 1. Resnikoff does not know why the PC program generated intermediate results with doses of 16 rem at the 50th percentile and doses of about 50 rem at the 95th percentile. Resnikoff dep. pp. He confirms, however, that the PC program adjusts the doses upward or downward at various percentiles of uncertainty, just as it adjusts the estimated risk per unit dose upward and downward. Resnikoff dep. pp.

Resnikoff's run of the IREP program generated PCs for Lowe of 68.1% at the 95th percentile of uncertainty, 8.4% at the central value at the 50th percentile, and 0.2% at the 5th percentile. Gale dep. exhibit 7 at p. 7; Resnikoff dep. pp.; and Resnikoff dep. exhibit Q. *See*

6

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

*also* Gale dep. exhibit 8 at p. 2. The Resnikoff and Gale reports included only the very highest PC values that Resnikoff obtained – for the 95th and 99th percentiles of uncertainty – and from a later run of the program Plaintiffs have yet to produce to the Defendant. Resnikoff confirmed at his deposition that all of the PCs he generated for Finestone were lower than the PCs he generated for Lowe. Resnikoff dep. pp.

<u>Legal Standard Governing Rule 702 and Daubert Motions</u>

Under Rule 702, <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and its progeny, scientific evidence is not admissible unless it is both reliable and relevant. <u>United States v. Henderson</u>, 409 F.3d 1293, 1304 (11th Cir. 2005); <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005). It must constitute scientific knowledge *and* assist the trier of fact to understand the evidence or determine a fact at issue. <u>Henderson,</u> 409 F.3d at 1304. Here, the issue is whether Plaintiffs' claimed exposures caused their medulloblastoma and neuroblastoma. If Gale's testimony will not assist the jury to understand the evidence or determine whether Plaintiffs' claimed exposures caused their cancers, it is not admissible. The Court must screen out expert testimony that is not scientifically reliable or trustworthy for the factfinder to consider. <u>United States v. Brown</u>, 415 F.3d 1257, 1266 (11th Cir. 2005). Thus, even if Gale's testimony were relevant to causation, it must be excluded if Plaintiffs cannot establish that it is scientifically reliable.

To determine if expert evidence is admissible, the trial court must consider whether (1) the expert is qualified to testify competently on the matter about which he will testify; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry <u>Daubert</u> mandates; and (3) his testimony will assist the trier of fact, by applying scientific or specialized expertise, to understand the evidence or determine a fact in

7

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

issue.[3] Plaintiffs, as proponents of Gale's testimony, carry the substantial burden under Rule 702 of demonstrating that his opinions are based on sound methodology and thus reliable; *and* will assist the trier of fact to understand the evidence or determine a fact in issue – whether radiation from the St. Lucie facility caused Plaintiffs' medulloblastoma and neuroblastoma.[4]

In determining whether an expert's testimony constitutes scientific knowledge, the Court should consider the underlying theory or technique on which the expert bases his opinion in light of at least five factors: (1) whether the theory or technique can be and has been tested; (2) whether that theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error for the expert's theory or technique; (4) the existence and maintenance of standards controlling the operation of the theory or technique; and (5) whether that theory or technique has attained general acceptance in the relevant scientific community.[5] Examined in light of Daubert and other factors adopted by the Eleventh Circuit, Gale's causation opinion is not premised on a scientifically reliable methodology and must be excluded under Rule 702. The methodologies by which he identifies radiation as causing medulloblastoma and neuroblastoma – in Plaintiffs or anyone – either have not been tested or show no radiation effect. They have not been subjected to peer review and publication, are in error or have unknown error

---

[3] United States v. Buonsignore, ___ F.3d ___, 131 Fed. App. 252, 255 (11th Cir. 2005); United States v. Frazier, 387 F.3d 1244, 1258 (11th Cir. 2004), *cert. denied*, ___ U.S. ___, 125 S. Ct. 2516, 161 L.Ed. 2d 1114 (2005); Rink, 400 F.3d at 1291-92; City of Tuscaloosa v. Harcros Chems., 158 F.3d 548, 562 (11th Cir. 1998).
[4] Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1113 (11th Cir. 2005); Rink, 400 F.3d at 1292; McDowell v. Brown, 392 F.3d 1283, 1297 (11th Cir. 2004). *See also* Hall v. United Ins. Co., 367 F.3d 1255, 1261 (11th Cir. 2004); Quiet Tech, DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340-41, 1347 (11th Cir. 2006), *citing* Harcros, 158 F.3d at 562.
[5] Henderson, 409 F.3d at 1302, *citing* Daubert, 509 U.S. 579, 113 S. Ct. 2786. *See also* Rink, 400 F.3d at 1292 (factors 1-3 and 5); Quiet Tech, 326 F.3d at 1341 (same); McDowell, 392 F.3d at 1298 (same). In addition to the factors Daubert identified for assessing the reliability of expert testimony, a trial court may consider the expert's "reliance on anecdotal evidence (as in case reports), temporal proximity, and improper extrapolation (as in animal studies)." McDowell, 392 F.3d at 1298; Allison v. McGhan Medical Corp., 184 F.3d 1300, 1312 (11th Cir. 1999).

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

rates, have no standards controlling their operation, and have not attained general acceptance in the scientific community. Gale's testimony should be excluded under Rule 702 also because it will not assist the trier of fact to understand the evidence or determine the issue whether Plaintiffs' exposures caused their cancers.

## ARGUMENT

A. Gale's Causation Opinion Must Be Excluded Since It Is Not Dose-Related, But Based On The Unreliable Methodology Of Assuming That Even Doses Comparable to Natural Background Radiation Would Have Caused or Contributed to Brain Or Nervous System Cancers Appearing After Exposure.

Plaintiffs in a toxic tort case must establish both general causation and specific causation. McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1239-45 (11th Cir. 2005). "'General causation is concerned with whether an agent increases the incidence of disease in a group and not whether the agent caused any individual's disease.'"[6] Specific causation requires proof that Plaintiffs were exposed to enough of the toxic substance to cause the claimed disease, and that "the toxin did in fact cause the injury." Id. at 1239. "Thus, in this case, Plaintiffs' experts must offer reliable opinions about" the "general toxicity" of strontium, iodine, or other radionuclides at issue "for the harm Plaintiffs allege" – neuroblastoma and medulloblastoma – "and that it in fact harmed them." Id.

Gale does not premise his causation upon a specific dose and indicates that his causation opinions would not change even if Plaintiffs were exposed to only 1 rem (1000 millirem), or comparable to the dose that the average person receives from natural background radiation in three years. Gale dep. pp. Gale's causation opinion is not based on any scientific methodology, but rather on his *ipse dixit* conclusion that radiation must have caused or contributed to

---

[6] McClain, 401 F.3d at 1239, *quoting* Michael D. Green *et al., Reference Guide on Epidemiology, in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 392 (Federal Judicial Center, 2d ed. 2000).

9

Plaintiffs' cancers since they were exposed and radiation causes cancers in different organs and tissues. An expert's toxic tort causation opinion that does not consider a person's dose derives from an unreliable methodology and is excludable under Daubert since the likelihood that a substance (*e.g.*, radiation) caused a person's disease turns most critically on dose or the magnitude of exposure.[7]

The Eleventh Circuit in McClain, 401 F.3d at 1240, affirmed exclusion of an expert's causation opinion based on the "profound toxicity" of the substance and his claim that "any level … poses 'an unreasonable risk of harm'" – similar to Gale's testimony associating cancers with natural background radiation even though he concedes that no increase in cancer has been detected in studies of persons living in areas of high natural background radiation. As Gale reached his causation opinion by "neglecting the hallmark of the science of toxic torts – the dose-response relationship," his testimony must be excluded under Daubert. *Id.* at 1240, 1242.

An expert's causation opinion is "methodological[ly]" flawed and inadmissible under Daubert if he has "laid no reliable groundwork for determining the dose-response relationship" for the alleged toxic substance and the claimed disease. "[S]cientific knowledge of the harmful level of exposure … plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary to sustain the plaintiff's burden …" McClain, 401 F.3d at 1241. "This requires not simply proof of exposure to the substance, but proof of enough exposure to cause the plaintiff's specific illness." *Id.* at 1242.

"The dose-response relationship is '[a] relationship in which a change in amount, intensity, or duration of exposure to an agent is associated with a change – either an increase or

---

[7] McClain, 401 F.3d 1233; Burleson v. Texas Dept. of Criminal Justice, 393 F.3d 577 (5th Cir. 2004); Allen v. Pennsylvania Eng'g Corp., 102 F.3d 194 (5th Cir. 1996); Wright v. Williamette Inds., 91 F.3d 1105, 1106 (8th Cir. 1996); Cano, 362 F. Supp. 2d 814.

decrease – in risk of disease.'" *Id.* at 1241-42. "The expert who avoids or neglects this principle of toxic torts without justification casts suspicion on the reliability of his methodology." *Id.* at 1242. "Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse effect." *Id.* Gale eliminated the dose-response relationship from his analysis of whether radiation caused medulloblastoma and neuroblastoma in Plaintiffs, or in anyone else.

For a court "evaluating the reliability" of an expert's causation opinion, "it would help to know how much additional risk" for the claimed conditions persons with Plaintiffs' exposures "have over the risks the general population faces." If Plaintiffs' expert "offer[s] no evidence of additional risk," then the "court must assume that it does not exist," *i.e.*, that Plaintiffs cannot establish even general causation. McClain, 401 F.3d at 1244. Gale offers no evidence of additional risk for medulloblastoma or neuroblastoma from any radionuclide exposure Plaintiffs allege, and no quantification of Plaintiffs' alleged risk.

   B. Gale's Causation Opinion Derives From An Unreliable Methodology Because It Is Not Based Upon Evidence That Plaintiffs Received Radiation Doses That At Least Doubled Their Risks For Neuroblastoma And Medulloblastoma And Thus Have A Greater Than 50% Probability Of Causing Their Cancers.

To establish specific causation, Plaintiffs must prove that there is a greater than 50% probability that St. Lucie nuclear plant radiation caused or substantially contributed to their cancers. Proof of "more likely than not" causation "means that epidemiological evidence must show that the incidence of an injury or condition in the exposed population was more than double the incidence in the unexposed or control population." Cano v. Everest Minerals Corp., 362 F. Supp. 2d 814, 820 (W.D. Tex. 2005). As the Eleventh Circuit held in Allison, 184 F.3d at 1315 n.16:

11

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

> The threshold for concluding that an agent more likely than not caused a disease is 2.0. A relative risk of 1.0 means that the agent has no causative effect on incidence. A relative risk of 2.0 thus implies a 50% likelihood that the agent caused the disease. Risks greater than 2.0 permit an inference that the plaintiffs' disease was more likely than not caused by the agent. Federal Judicial Center, *Reference Manual on Scientific Evidence* 168-69 (1994).

Gale admits that he found no articles or studies reporting a statistically significant relative risk of 2.0 or higher from radiation for either medulloblastoma or neuroblastoma, or any scientific or medical literature reporting a significant excess or any radiation risk for medulloblastoma. Gale dep. pp. Thus, Gale concedes he cannot identify any scientific literature showing a doubling of the risk for medulloblastoma or neuroblastoma from radiation, as the Eleventh Circuit requires for epidemiologic proof of "more likely than not" causation. Allison, 184 F.3d at 1315 n.16. Gale and Plaintiffs lack the epidemiological evidence necessary to establish a statistically significant relative risk of greater than 2.0 – to prove specific causation – and likewise lack evidence that epidemiological studies consistently show a significant excess of neuroblastoma and medulloblastoma from radiation, as required to prove general causation.

The only article or study that Gale cites as showing a radiation risk for neuroblastoma is a Doll and Wakeford review article that includes a table referring to a 1.46 relative risk (or 46% excess) for neuroblastoma in the 1975 Bithell and Stewart study of prenatal exposures. Gale dep. pp.; Gale dep. exhibit 15. This 1.46 relative risk falls far short of the 2.0+ threshold for "more likely than not" causation. See Allison, 184 F.3d at 1315 n.16; Cano, 362 F. Supp. 2d at 820-22.[8] Bithell and Stewart's study does not support Gale's causation opinion also because he

---

[8] "[T]he requirement that there be more than a doubling of the risk," *i.e.*, a "relative risk of greater than 2.0," for epidemiologic evidence to satisfy the "more likely than not burden of proof" of a greater than 50% probability of causation "means the epidemiological evidence must show that the incidence of an injury or condition in the exposed population was more than double the incidence in the unexposed or control population." Cano, 362 F. Supp. 2d at 820.

12

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

does not know how the Plaintiffs' prenatal radiation exposures compared to the radiation doses received by the mothers or fetuses in the study. Gale dep. pp.

"Even if an epidemiological study satisfies the doubling of the risk criteria, however, other factors must still be considered," such as the Bradford-Hill or Henle-Koch-Evans Postulates, which "are part of the sound methodology generally accepted by the scientific community."[9] "Particularly where direct experimentation cannot be done, it is important that any conclusions about causation be reached only after an association is observed in studies among different groups and that the association continues to hold when the effects of other variables are taken into account." Cano, 362 F. Supp. 2d at 821.

It is not enough for Plaintiffs to point to the "generic capacity of ionizing radiation to cause cancer." Cano, 362 F. Supp. 2d at 824. "Given that cancer is a common phenomenon with many causes, both known and unknown, without epidemiological evidence demonstrating a relative risk of greater than 2.0, Plaintiffs will have a more difficult time reliably establishing that an individual's cancer was, more likely than not, caused by Defendant's conduct." Id. Also, "to establish causation," Plaintiffs "must not only introduce sufficient epidemiological evidence" – which they lack – but "must also show that [they] are similar to those in the studies, which includes proof that Plaintiffs were "exposed to the same substance, that the exposure or dose levels were comparable or greater than those in the studies, that the exposure occurred before the onset of injury" – particularly difficult here for Plaintiffs' embryonic cancers – "and that the timing of the onset of the injury was consistent with that experienced by those in the study." Id. Gale's analysis ignores all of those requirements.

---

[9] Cano, 362 F. Supp. 2d at 820-21. The Bradford-Hill criteria include the strength, consistency, and specificity of the association; temporality; a biological gradient or dose-response relationship; plausibility; coherence; experimental evidence; and analogy. Id. at 821 n. 10.

Finally, the National Academy of Sciences' BEIR V report, the only scientific reference cited in Gale's report, reflects the scientific consensus cautioning against treating excess risks of less than 50% as causal, as Gale does with the 1.46 relative risk, or 46% excess, from Bithell and Stewart. Gale dep. pp.; Gale dep. exhibit 16 (BEIR V) at p. 50) ("Epidemiologists generally agree that excess risks of less than 50% are difficult to interpret causally.") Gale rejects this scientific consensus. Gale dep. pp.

C. Gale's "Differential Diagnosis" Methodology For Attributing Plaintiffs' Cancers To Radiation Is Unreliable.

Gale opines that radiation caused or substantially contributed to Plaintiffs' cancers since he cannot identify other "overwhelming risk factor" for their cancers. Gale dep. exhibit 4; Gale dep. pp. He cites his general medical background and expertise as a basis for identifying radiation as causing Plaintiffs' cancers. Gale dep. pp. As the Eleventh Circuit held in Rink, 400 F.3d at 1295, such differential diagnosis evidence by itself does not prove causation and will not meet Plaintiffs' burden of proof. Gale's methodology is nothing more than a "differential diagnosis" applied erroneously in toxic torts to create a facade for his causation opinion. It is classic "junk" science uncorroborated by a dose-response relationship and quantified probability for radiation causing these cancers of unknown etiology.

D. Gale Uses An Unreliable Methodology For Implicating Radiation As Causing Medulloblastoma By Omitting Proof It Increases The Incidence In An Exposed Group.

"General causation is concerned with whether the agent increases the incidence of disease in a group . . . ." McClain, 401 F.3d at 1239. Gale concedes that he cannot identify any scientific or medical evidence showing an increase in medulloblastoma from radiation in any exposed group. This is fatal to his "general causation" opinion concerning medulloblastoma.

E.  Gale's Testimony Must Be Excluded As He Did Not Employ A Conservative Intellectual Rigor In Concluding That Radiation Caused Plaintiffs' Cancers.

Scientific disciplines addressing "causation or toxicity" issues employ "an intellectual rigor that is conservative and [do] not leap to specific conclusions about causation and toxicity from incomplete evidence or broad principles." McClain, 401 F.3d at 1248. Gale leaps to conclusions of general causation and specific causation loosely based on broad principles and in disregard of a substantial body of directly contrary epidemiological evidence. See, e.g., Gale dep. exhibits 13-14. His reliance on reports of radiation causing other cancers – that Plaintiffs did not develop – falls short of the conservative intellectual rigor required for toxic tort causation. See, e.g., Rink, 400 F.3d at 1292 (transposing data based on conjectures and rough approximation lacks the intellectual rigor required by Daubert).

Daubert and its progeny "warn against leaping from an accepted scientific premise to an unsupported one." Allison v. McGhan Medical Corp., 184 F.3d 1300, 1314 (11th Cir. 1999). The methodology for Gale's causation analysis is based upon the unscientific leap of assuming that radiation must cause neuroblastoma and medulloblastoma since it has been implicated in causing other types of tumors – though not necessarily all types of tumors. Gale dep. pp.

F.  Gale's Causation Opinion Premised On The Linear No-Threshold And "No Safe Dose" Theories Derives From An Unreliable Methodology Since Public Health Guidelines Should Not Be Interpreted As Predicting Exposure Levels That Cause Disease In A Given Person And Are Unreliable As Proof Of Causation.

The Eleventh Circuit in McClain, 401 F.3d at 1249, excluded an expert's testimony on toxic tort causation based on the improper methodology of using a "risk assessment that a governmental agency follows for establishing public health guidelines." Proving risk is not "proof of causation" since they involve "different questions," with risk assessment frequently based on a cost-benefit analysis. "[R]isk assessors may pay heed to any evidence that points to a

15

need for caution rather than assess the likelihood that a causal relationship in a specific case is more likely than not." By contrast, "in a toxic tort case the court must focus on assessing causation, not on a cost-benefit analysis for restricting" the use or spread of a substance. Id.

Risk assessment procedures used to establish public health guidelines on acceptable exposure levels for populations are of "marginal relevance" for determining if an exposure caused a person's disease. Even a public agency determination that a substance can cause a particular condition "is unreliable proof of medical causation" where it "employs a reduced standard (vis-à-vis tort liability) for gauging causation," as when imposing regulatory restrictions. McClain, 401 F.3d at 1249.

G. Gale's Testimony Must Be Excluded Since It Is Not Based On Sufficiently Reliable Facts And Data

Rule 702 permits expert testimony only if it based on sufficient facts or data. Cook, 402 F.3d at 1111. The methodology by which an expert arrives at his ultimate conclusion is fundamentally flawed if it is not based on sufficiently reliable facts or data. Rink, 400 F.3d at 1290. If an expert's testimony lacks a sufficient factual, medical or scientific foundation, the Court should exclude it as unhelpful or misleading. Cook, 402 F.3d at 1112. Gale lacks a sufficient factual, medical or scientific basis for his opinion that Plaintiffs' radiation doses caused their neuroblastoma and medulloblastoma – childhood malignancies that are not established as radiation effects even after doses hundreds to thousands of times higher than Plaintiffs allegedly received.

Scientific testimony does not assist the trier of fact unless it was a justified scientific relationship to the pertinent facts. McDowell, 392 F.3d at 1299. The issue is one of "fit." Allison, 184 F.3d at 1312 ("'Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility,' This connection has been

16

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

appropriately denominated as 'fit.'") (*quoting* Daubert, 509 U.S. at 591, 113 S. Ct. 2786). There is no fit if a large analytical leap must be made between the facts and the expert's opinion, as in General Electric v. Joiner, 522 U.S. 136, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997), where the Court held that there was too great an analytical gap between animal data for one type of cancer and the cause of a different cancer in humans. McDowell, 392 F.3d at 1299.

Gale's causation opinion is based on serial leaps unsupported by scientific literature. Pointing to evidence of radiation causing some cancers, he opines that radiation must also cause neuroblastoma and medulloblastoma. Ignoring the background incidence of these cancers, he suggests that low dose radiation is necessarily a cause or contributor to all such cancers in persons for whom no other "overwhelming risk factor" can be identified. Gale dep. exhibit 4; Gale dep. pp. If there is too great an analytical gap between the data relied on by the expert and his proffered opinions, his opinions are excluded. Rink, 400 F.3d at 1290. Gale provides no scientific basis for his opinion that radiation caused or contributed to Plaintiffs' cancers. Expert testimony that is imprecise or unsound, or whose factual basis is not adequately explained, is to be excluded.[10]

## CONCLUSION

For the foregoing reasons, this Court should exclude Gale's testimony.

---

[10] Cook, 402 F.3d at 1111; Frazier, 387 F.3d at 1266. *See also* Hall, 367 F.3d at 1261-62, where an expert's opinion was excluded where the proponent failed to demonstrate that the information reviewed by the expert contained sufficient facts or data upon which to base his opinion. Gale, like the expert excluded in Hall, cited no scientific methodology or literature supporting his conclusions or approving of the methods by which he reached those conclusions.

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

Dated this 1st day of December 2005.

        Respectfully submitted,

        SQUIRE, SANDERS & DEMPSEY LLP
        200 South Biscayne Blvd.
        Suite 4000
        Miami, Florida 33131-2398
        Telephone: 305.577.2835
        Facsimile: 305.379.7146
        E-mail: adavis@ssd.com

By: _____
        Denise B. Crockett
        Florida Bar No. 327913
        Patrick J. O'Connor
        Florida Bar No. 0715778


Donald E. Jose, Esquire
JOSE & WIEDIS
Goshen Executive Center
1450 E. Boot Road, Suite 300B
West Chester, PA 19380
Telephone: 610-436-1888
Facsimile: 610-436-1863
E-mail: djose1@comcast.net

Ralph H. Johnson, Esquire
SCHMELTZER, APTAKER & SHEPARD, PC
2600 Virginia Avenue, NW
Suite 1000
Washington, DC 20037
Telephone: 202.342.3426
Facsimile: 202.625.3310
E-mail: rhj@saslaw.com

CASE NO. 03-14040-CIV-COHN
CASE NO. 04-14128-CIV-COHN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was this 1st day of December 2005 furnished by U.S. mail to: Nancy La Vista, Esq., Lytal, Reiter, Clark, Fountain & Williams, LLP, 515 N. Flagler Drive, Suite 1000, West Palm Beach, Florida 33401.

_____
Patrick J. O'Connor